ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -x

BYRON SHARPE,                          :

                    Plaintiff,         :

          - against -                  :

MCI COMMUNICATIONS SERVICES, INC., :

                    Defendant.         :

- - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2|11|10

**OPINION**

07 Civ. 7708 (DC)

98549

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/16/10

**APPEARANCES:**         TIMOTHY PATRICK DEVANE, ESQ.
                    Attorney for Plaintiff
                    202 West 84th Street
                    New City, New York  10024

                    JONES DAY
                    Attorneys for Defendant
                       By: Shari Michelle Goldsmith, Esq.
                    222 East 41st Street
                    New York, New York  10017

**CHIN, District Judge**

          Plaintiff Byron Sharpe is an African-American male who
was employed by defendant MCI Communications Services, Inc.
("MCI") from September 2000 until March 2006 as a "telecom
technician."  In February 2006, Sharpe complained to his senior
manager and the Human Resources Department about his direct
manager's confrontational and aggressive management style.  Soon
after, Sharpe's direct manager was reassigned to a new position.
In March 2006, Sharpe was laid off as part of a Reduction in
Force ("RIF").

          Sharpe claims that his inclusion in the March 2006 RIF
was in fact pretext for (1) discrimination based on race, and (2)
retaliation for his complaints against his direct manager.
Sharpe further claims that he was subjected to a racially hostile

MICROFILMED
FEB 1 6 2010 -3 00 PM

work environment.  Because a reasonable jury could not find that
MCI discriminated or retaliated against plaintiff, or subjected
him to a racially hostile work environment, MCI's motion for
summary judgment is granted and the case is dismissed.

## BACKGROUND

### A.  Facts

On a motion for summary judgment, the Court construes
the evidence in the light most favorable to the non-moving party.
The following facts are taken from the exhibits, declarations,
and deposition transcripts submitted by the parties.

#### 1.  Sharpe's Employment with MCI

Sharpe is an African-American male who was employed by
MCI as a telecom technician.  (Compl. ¶ 6).  Sharpe worked for
MCI from approximately September of 2000 until March 25, 2006,
when his employment was terminated.  (Id. ¶ 6, 28).  During the
course of Sharpe's employment, MCI merged with Verizon, Inc.
(Id. ¶ 19).

Sharpe worked in a number of locations and for a
variety of managers throughout his tenure, but his job function
remained essentially the same.  (Pl. Dep. 29-60).

#### 2.  Sharpe's Performance Evaluations

Each year, Sharpe received an annual performance
appraisal, which evaluated his performance in a variety of
different categories and then assigned him an overall rating.
There were five possible rankings:  (1) Significantly Exceeds
Performance Requirements and Expectations; (2) Exceeds

-2-

Performance Requirements and Expectations ("Exceeds Ranking");
(3) Meets Performance Requirements and Expectations ("Meets
Ranking"); (4) Improved Performance Required ("Improvement
Required Ranking"); and (5) Unsatisfactory Performance.

For each of his six years, Sharpe received an overall
Meets Ranking. (Pl. Dep. Exs. 1-9). The rankings within the
general categories were more nuanced. These reviews and comments
are discussed more fully below.

### 3. Sharpe's Interaction with Fabiitti

In approximately August 2005, Sharpe began reporting to
Daniel Fabiitti. (Pl. Dep. 132). In approximately October 2005,
Sharpe began experiencing difficulties with Fabiitti. (Id. at
132-33). In November and December of 2005, Fabiitti berated and
belittled Sharpe on a weekly or bi-weekly basis. (Id. at 133).
After December 2005, Fabiitti's critical comments became more
frequent. (Id.).

Two incidents with Fabiitti prompted Sharpe to lodge
formal complaints. The first incident involved Fabiitti yelling
at Sharpe. (Id. at 134-37). The second incident involved a
heated argument between Sharpe and Fabiitti, which was broken up
by a co-worker. (Id. at 141-45).

### 4. Sharpe's Complaints

Sharpe complained to Mitchell on two occasions and to
the Human Resources Department on one occasion regarding the two
incidents with Fabiitti noted above. (Id. at 137, 149-50).
Sharpe never complained to Mitchell or Human Resources that

-3-

Fabiitti's behavior was connected to Sharpe's race.  (See id. at
159).  In his declaration, Mitchell confirms that Sharpe never
mentioned race.  (Mitchell Decl. ¶ 4).

Each time Sharpe complained, Mitchell approached
Fabiitti and discussed the need for Fabiitti to change his
management style.  (Id. ¶ 6).  In March 2006, due to Sharpe's
complaints and a complaint made by Sharpe's co-worker,[1] Fabiitti
was transferred.  On April 27, 2006, six employees formerly
supervised by Fabiitti sent Mitchell an e-mail vouching for
Fabiitti's managerial capabilities and requesting that he be
reinstated as their manager.  (Id. Ex. A).  Of these six
employees, four were African American, one Hispanic, and one
Native American.  (Id. ¶ 7).

### 5.  Termination of Sharpe's Employment

In January 2006, MCI merged with Verizon Communications
Inc.  (Id. ¶ 8).  As a result of the merger, Mitchell was asked
to reduce his group by 10%, or four employees.  (Id.).  In March
2006, Sharpe was chosen to be one of the four employees laid off
as part of the RIF.  (Id. ¶ 9).  Of the three other employees
selected for the RIF, one was African American and two were
Caucasian.  (Id.).

### B.  Prior Proceedings

On December 7, 2006, Sharpe filed a charge of
discrimination with the Equal Employment Opportunity Commission

---

[1]    The co-worker was also African American.  She
complained to Mitchell that Fabiitti had falsely accused her of
making errors and refused to listen to her explanation.
(Mitchell Decl. ¶ 6; Pl. Dep 236).  Sharpe has not asserted that
this employee alleged discrimination, nor does the record so
indicate.

("EEOC") alleging retaliation and discrimination based on his race. (Pl. Dep. Ex. 1). On May 31, 2007, the EEOC advised that, based on its investigation, it could not conclude that the "information obtained establishe[d] violations of the statutes." (Pl. Dep. Ex. 3). Accordingly, the EEOC issued a right to sue letter. (Id.).

On August 29, 2007, Sharpe filed a complaint in this Court against Verizon Business Network Services Inc. and Verizon Business Purchasing LLC. The complaint alleged harassment, discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) ("Title VII"), New York State Human Rights Law, N.Y. Exec. Law § 15 et seq., and New York City Human Rights Law, N.Y. City Admin. Code § 8-101 et seq. On March 30, 2009, pursuant to a stipulation endorsed by this Court, Sharpe filed an amended complaint substituting MCI as defendant and dismissing the previously named defendants. On April 1, 2009, MCI filed the instant motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## DISCUSSION

### A. Summary Judgment Standard

The standards governing motions for summary judgment are well-settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. See Fed R. Civ. P. 56(c); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986). Summary judgment should be

denied "if the evidence is such that a reasonable jury could
return a verdict" in favor of the non-moving party.  See NetJets
Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 178-79 (2d
Cir. 2008).  In deciding a motion for summary judgment, the Court
must construe the evidence in the light most favorable to the
non-moving party and draw all reasonable inferences in the non-
moving party's favor.  In re "Agent Orange" Prod. Liab. Litig.,
517 F.3d 76, 87 (2d Cir. 2008).

        In deciding a motion for summary judgment, the role of
the Court is not to ask whether "the evidence unmistakably favors
one side or the other but whether a fair-minded jury could return
a verdict for the plaintiff on the evidence presented."  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Because the
Court's role is limited in this respect, it may not make factual
findings, determine credibility of witnesses, or weigh evidence.
See Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir.
2005); Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 619 (2d
Cir. 1996); United States v. Rem, 38 F.3d 634, 644 (2d Cir.
1994).

**B.   Title VII Hostile Work Environment Claim**

        "'[W]hen the workplace is permeated with discriminatory
intimidation, ridicule, and insult, that is sufficiently severe
or pervasive to alter the conditions of the victim's employment
and create an abusive working environment, Title VII is
violated.'"  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101,
116 (2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17,
21 (1993)) (internal quotation marks omitted); see also Schiano

-6-

v. Quality Payroll Sys., Inc., 445 F.3d 597, 604 (2d Cir. 2006).
"A hostile work environment claim has two aspects:  A plaintiff
must show (1) harassment sufficiently severe and pervasive so as
to alter the conditions of his employment, and (2) the conduct
was motivated by plaintiff's membership in a protected class."
Pearson v. Board of Educ., 499 F. Supp. 2d 575, 592 (S.D.N.Y.
2007).  A hostile work environment claim under Title VII requires
a showing that the conduct occurred because of plaintiff's
membership in a protected class.  See Brennan v. Metro. Opera
Ass'n, 192 F.3d 310, 318 (2d Cir. 1999).  "Abusive conduct in the
workplace, if not based on a protected class, is not actionable
under Title VII.  This statute prohibits discrimination, and is
not a civility code."  Pearson, 499 F. Supp. 2d at 592 (citing
Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81
(1998)).

On a motion for summary judgment, the non-moving party
"must  present concrete particulars and cannot succeed with
purely conclusory allegations."  Cadle Co. v. Newhouse, No. 01
Civ. 1777 (DC), 2002 U.S. Dist. LEXIS 15173, 2002 WL 1888716, at
*4 (S.D.N.Y. Aug. 16, 2002) (internal quotation marks omitted);
see also Cameron v. Cmty. Aid for Retarded Children, Inc., 335
F.3d 60, 63 (2d Cir. 2003) (finding "[p]urely conclusory
allegations of discrimination" insufficient to defeat summary
judgment motion).  "Personal speculation is insufficient as a
matter of law to raise an inference of discrimination."  Boise v.
N.Y. Univ., No. 03 Civ. 5862 (RWS), 2005 U.S. Dist. LEXIS 26378,
2005 WL 2899853, at *4 (S.D.N.Y. Nov. 3, 2005).

Here, even assuming Sharpe could show sufficiently severe and pervasive harassment, the evidence is insufficient to establish that the complained of conduct occurred because of Sharpe's membership in a protected class. Sharpe's hostile environment claim rests wholly on Fabiitti's alleged conduct. (Pl. Dep. 26) (testifying that, prior to being supervised by Fabiitti, plaintiff felt he was treated fairly and not discriminated against based on his race). Sharpe presents essentially four pieces of purported evidence: (1) Fabiitti's hostile treatment of him, (2) Sharpe's subjective belief that Fabiitti "was nasty, a mean person when it came to people of color" (id. at 192), (3) another African-American employee's complaint that Fabiitti yelled at and belittled her (id. at 160-62; Mitchell Decl. ¶ 6), and (4) Sharpe's assertion that four white employees were not yelled at by Fabiitti (Pl. Dep. 186-91). As to the four white employees who were not yelled at, Sharpe admits that one was the aunt of the company's director, who might have been treated favorably because of that relationship. (Id. at 187-88). Sharpe further testified that he could not recall whether the other three white employees ever worked for Fabiitti, but also noted that Fabiitti would yell at Sharpe even when Sharpe was no longer working for him. (Id. at 187-91).

Sharpe has not presented sufficient "concrete particulars" to prove a racially hostile work environment. Even assuming he was treated harshly by Fabiitti, the record does not contain sufficient evidence to support a finding that this treatment was racially motivated. Sharpe's subjective belief,

-8-

unsupported by any concrete facts or particulars, that Fabiitti was "nasty" and "mean" when it came to people of color is insufficient to defeat summary judgment.  The fact that Fabiitti did not yell at four white employees who might or might not have worked for him proves nothing.  Further, Sharpe's argument is undermined by his admission that Fabiitti never made any derogatory racial comments (id. at 29), and the fact that in all of his complaints against Fabiitti, Sharpe never once mentioned race discrimination.  (Id. at 160).  Finally, six employees -- all people of color -- sent an email vouching for Fabiitti and requesting his reinstatement.  (Mitchell Decl. Ex. A).

For the above reasons, Sharpe has failed to show the existence of genuine issues of material fact for trial.  No reasonable jury could conclude that Sharpe was subjected to a hostile work environment because of his race.  Accordingly, Sharpe's hostile work environment claim is dismissed.

## C.  **Title VII Wrongful Termination Claim**

### 1.  **Applicable Law**

The "ultimate issue" in any employment discrimination case is whether the plaintiff has met his burden of proving that the adverse employment decision was motivated at least in part by an "impermissible reason" -- i.e., that there was discriminatory intent.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146 (2000).

In the absence of direct evidence of discrimination, a plaintiff in an employment discrimination case usually relies on

-9-

the three-step <u>McDonnell Douglas</u> test.  First, a plaintiff must establish a prima facie case of unlawful discrimination by showing that (1) she is a member of a protected class (2) who performed her job satisfactorily (3) but suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination.  See <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 & n.13 (1973) (noting that elements of prima facie case vary depending on factual circumstances); <u>Stratton v. Dep't for the Aging</u>, 132 F.3d 869, 879 (2d Cir. 1997).

If the plaintiff establishes a prima facie case of discrimination, "a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision."  <u>Stratton</u>, 132 F.3d at 879; <u>see</u> <u>Reeves</u>, 530 U.S. at 142-43.

If the employer articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted and it "simply drops out of the picture."  <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 510-11 (1993) (citation omitted); <u>see</u> <u>James v. N.Y. Racing Ass'n</u>, 233 F.3d 149, 154 (2d Cir. 2000).  The burden then shifts back to the plaintiff to show, without the benefit of any presumptions, "that more likely than not the employer's decision was motivated, at least in part, by a discriminatory reason."  <u>Connell v. Consol. Edison Co.</u>, 109 F. Supp. 2d 202, 207 (S.D.N.Y. 2000).

## 2.  Application

I assume for purposes of this motion that plaintiff has made a prima facie showing of discrimination on the basis of race.  Defendant has met its burden of articulating a non-discriminatory reason for terminating plaintiff.  See Stratton, 132 F.3d at 879; see also Reeves 530 U.S. at 142-43.  Simply put, MCI contends that it included Sharpe in the RIF because Sharpe was one of the lowest-performing technicians in his department.

Accordingly, I proceed directly to the ultimate question of whether Sharpe has presented sufficient evidence from which a reasonable jury could find that he was discriminated against because of his race.  I do so by evaluating first Sharpe's evidence, then MCI's evidence, and finally the record as a whole, keeping in mind the elusiveness of proof of discrimination and the principle that the jury is "entitled to view the evidence as a whole."  Stern v. Trs. of Columbia Univ., 131 F.3d 305, 314 (2d Cir. 1997).

### I.  Sharpe's Evidence

#### (a)  Sharpe's Qualifications

In support of his contention that he was fired because of his race, Sharpe provides the following evidence, which he contends demonstrates that he was, at minimum, a satisfactory employee, undeserving of being included in the RIF:

First, Sharpe received a satisfactory overall rating for each year that he was employed by defendant.  (Pl. Opp. Mem. of Law 12-13; Pl. Dep. Exs. 4-9).

-11-

Second, Sharpe received numerous Exceeds Rankings throughout the course of his employment, including seven Exceeds Rankings in his 2004 evaluation. (Pl. Dep. Exs. 1-9).

Third, Sharpe only received Improvement Required Rankings in two categories throughout his six years of employment. (Id. Ex. 7).

Fourth, because Sharpe worked the late shift, he often completed work left behind by the day workers. (Pl. Dep. 117-19). This resulted in Sharpe being assigned fewer orders. (Id.). Sharpe suggests that this might have given his managers a skewed perception of his productivity. (Id.). Even assuming these facts are true, however, they do not show race-based discrimination.

Fifth, Sharpe disputes his managers' characterization of him as overly social during work hours by testifying that most of his conversations were work related and that the reason he was perceived as talking more than his coworkers was because he was taller than them and could be seen over the cubicles. (Id. at 107). To the extent these facts show discrimination at all, they show discrimination based on height, not race.

Finally, Sharpe offers a comment by one of his former co-workers, Sean Aziz. (Id. at 118). I will not consider this evidence as it is inadmissable hearsay. Aziz was not acting within the scope of his employment when making the statement in question, and thus the statement may not be construed as an admission by a party-opponent. Fed. R. Evid. 801(d)(2)(D).

-12-

**(b)   Sharpe's Comparators**

Sharpe alleges that he should have been retained over a number of former help desk employees.  These employees were dispersed from the help desk to technical teams in March 2005.  (Pl. Dep. 68-69).  Many of them were trained by Sharpe in their new, technical capacities.  (Id.).  Sharpe notes that the lack of technical expertise on the part of these employees who were not included in the RIF undermines MCI's contention, as quoted in an EEOC report, that Sharpe was chosen for the RIF based on an assessment of "'technical skills and knowledge needed going forward in the organization.'"  (Pl. Am. Compl. Ex. A).

Sharpe testified that, of the seven former help desk employees who were not included in the March 2006 RIF, one was Hispanic, three were African American, one was of Caribbean descent, one was Haitian, and one was Jamaican.  (Pl. Dep. 234-37).  Thus, 100% of plaintiff's alleged comparators are racial minorities.

Sharpe has not provided any information regarding the help desk employees' credentials, such as their level of education, years of experience, or annual reviews.

**(c)   Fabiitti's Role in Sharpe's Termination of Employment**

Sharpe testified that Fabiitti, who allegedly demonstrated a hostility toward minorities, influenced MCI's decision to terminate Sharpe's employment by giving Sharpe poor reviews and setting Sharpe up to fail by placing him in a job for

-13-

which he had no formal training.  (Pl. Opp. Mem. of Law 14-15).
In support of this contention, Sharpe notes only that Fabiitti
was one of the supervisors who signed his 2005 annual review.
(Id.; Pl. Dep. Ex. 9).  Without more, this claim is purely
speculative and does not support an inference of discrimination.

### ii.  MCI's Evidence

#### (a)  Sharpe's Qualifications

MCI does not dispute the positive rankings and comments
highlighted by plaintiff.  The evidence presented by MCI does not
even dispute that Sharpe met the basic requirements of his job
function.  Indeed, in his declaration, Mitchell acknowledges
that, due to a series of previous RIFs, "most of the employees
left in the [department] were meeting basic expectations."
(Mitchell Decl. ¶ 10).  Consequently, Mitchell was forced to
choose candidates for the RIF from a pool of competent employees.
MCI maintains that, within this pool, Sharpe was one of the
lowest-performing technicians, as reflected by his performance
evaluations and feedback from his managers.  (Id. ¶¶ 12-14).

MCI relies on a number of criticisms in Sharpe's annual
reviews.  Specifically, MCI notes the following:

First, Sharpe received an overall Meets Ranking, the
midpoint of five potential rankings, for each year he was
employed.  (Pl. Dep. Exs. 4-9).

Second, Sharpe's 2002 review stated that he "needed to
become more familiar with other facets of the department."  (Id.
Ex. 6).

Third, in his 2003 review, Sharpe received an
Improvement Required Ranking in the category of "job knowledge"

-14-

concerning his need to "think beyond his immediate assignment."
He also received an Improvement Required Ranking in the category
of "supervision required."  (Id. Ex. 7).  His supervisor noted
that Sharpe needed to "improve on his time management skills" to
"achieve and exceed" in his position and improve his rating.
(Id.).

Fourth, the 2004 evaluation, in which Sharpe received
seven Exceeds Rankings, was completed by a manager outside of the
department from which Sharpe was eventually laid off.  (Pl. Dep.
65-67 & Ex. 8).

Fifth, Sharpe's 2005 performance review indicated that,
while Sharpe was an experienced technician, he did "not always
make the correct decision when working orders," and noted that
his work contained errors.  (Pl. Dep. Ex. 9).  The review also
stated that "[g]iven [Sharpe's] length of time and experience in
the Company, he has the potential to handle a higher volume of
work," and that Sharpe needed "to be focused, self disciplined
and place added emphasis on striving to reach [his] potential."
(Id.).

Sixth, different supervisors spoke to Sharpe about
performance issues over the years, including socializing too much
at work and making careless errors.  (Pl. Dep. 107, 110).

Seventh, Sharpe's supervisors reported to Mitchell that
Sharpe "failed to effectively follow directions," repeatedly made
mistakes, "was unable to function at a higher level," socialized
too much during work hours, and made "excessive personal calls."
(Mitchell Decl. ¶ 13).  Plaintiff does not dispute that Mitchell

-15-

received these reports, although he does offer some explanations for his supervisors' criticisms.  He does not, however, contend that any supervisor other than Fabiitti was racially motivated.

Eighth, "when compared with his peers who were not selected for the RIF, [plaintiff] (and the three other employees who were selected) ranked the lowest."  (Id. ¶ 15).  Mitchell testified that all of the other technicians in the department received "either a higher overall rating, or scored higher in their individual performance categories."  (Id. ¶ 14).  Sharpe has not provided any evidence to dispute this testimony.

### (b)  Sharpe's Comparators

MCI provides an annual review of an Hispanic employee, formerly stationed on the help desk, who was not selected for the RIF, as evidence that plaintiff was not as qualified as those whose employment was sustained.  (Mitchell Decl. Ex. C).  The review indicates that the anonymous employee received three Exceeds Rankings in the areas of work productivity, job knowledge, and interdepartmental relations.  (Id.).  MCI does not provide reviews for any other employees who were not selected for the RIF.

Further, Mitchell testified that the employees who previously performed the help desk function, who were identified by plaintiff as being less valuable than him, were not selected for the RIF "because they had non-technical skills . . . that were equally complex and as important to the Company as technical skills," and because they "demonstrated future potential to be more proficient in all areas, including technical skills."  (Id. ¶ 16).

### (c)  **Fabiitti's Role in Sharpe's Termination**

Mitchell testified that, while he did rely in part on the 2005 annual review signed by Fabiitti, he also relied on the comments and reviews of multiple other supervisors, in addition to Fabiitti, when deciding to include Sharpe in the RIF. (Mitchell Decl. ¶¶ 10-13).

### iii.  **The Record as a Whole**

Considering the record as a whole, and resolving all conflicts in evidence and drawing all reasonable inferences in plaintiff's favor, I conclude that no reasonable jury could find that Sharpe's race was a motivating factor in the termination of his employment.

### (a)  **Sharpe's Qualifications**

The Second Circuit has recognized that "an employer's disregard or misjudgment of a plaintiff's job qualifications may undermine the credibility of an employer's stated justification for an employment decision." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001) (citing Fischbach v. D.C. Dep't of Corr., 86 F.3d 1180, 1183 (D.C. Cir. 1996)). Indeed, if an employer has "made an error too obvious to be unintentional, perhaps it had an unlawful motive for doing so." Fischbach, 86 F.3d at 1193. Here, however, there are no obvious errors or blatant misjudgments by MCI. The undisputed evidence provided confirms precisely what MCI suggests: Sharpe met but did not exceed the basic requirements of his position. MCI does not challenge any of plaintiff's evidence as to his qualifications.

-17-

Indeed, MCI accepts the positive comments contained in plaintiff's annual reviews and weighs them against the many critical comments offered by plaintiff's supervisors. Consequently, the Court cannot infer a pretext for discrimination based on Sharpe's qualifications alone.

### (b) **Sharpe's Comparators**

Sharpe advances two arguments regarding the former help desk employees. First, Sharpe suggests that the fact that the retained employees were less technically proficient than him exposes MCI's stated reasons for termination as pretextual. Second, Sharpe suggests a race-plus argument grounded on his characterization of the retained employees as immigrants with submissive dispositions. Both arguments lack factual underpinnings and cannot survive summary judgment.

As to the first argument, Sharpe does not present any concrete facts regarding the training, qualifications, or abilities of the retained employees. Indeed, Sharpe does not provide any evidence regarding his comparators' education, years of service, or annual reviews. Sharpe's speculation about his former colleagues' qualifications is thus insufficient to raise an inference of discrimination. Gupta v. N.Y. City Sch. Constr. Auth., 305 Fed. App'x 687, 689 (2d Cir. 2008) (affirming dismissal of discrimination claim where plaintiff claimed employees who were promoted or retained were "'less academically qualified with less professional experience'" and noting that "'a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary

-18-

judgment'" (quoting <u>Lipton v. Nature Co.</u>, 71 F.3d 464, 469 (2d Cir. 1995)); <u>Pearson v. Bd. of Educ.</u>, 499 F. Supp. 2d 575, 592-93 (S.D.N.Y. 2007).

Further, even if I were to accept and rely upon Sharpe's opinion regarding the retained employees' lack of technical skills, the record indicates that these employees had other strengths that justified excluding them from the RIF.  (Pl. Dep. 53-54; Mitchell Decl. ¶ 14; Mitchell Decl. Ex. C).  In retaining the former help desk employees, MCI was simply acting within its "unfettered discretion to choose among qualified candidates."  <u>Gupta</u>, 305 Fed. App'x at 689 (quoting <u>Byrnie v. Town of Cromwell, Bd. of Educ.</u>, 243 F.3d 93. 103 (2d Cir. 2001)).

Sharpe's second argument similarly fails to raise a suggestion of racial discrimination.  A plaintiff may raise an inference of discrimination by demonstrating that an employer treated him or her less favorably than a similarly situated employee outside of his or her protected group.  <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 39 (2d Cir. 2000) (citations omitted). Further, some courts have found that a plaintiff in the same protected category as his comparators may raise an inference of discrimination when the plaintiff demonstrates that he belongs to a subgroup of individuals within his protected category who are discriminated against based on a common characteristic.  Equal Opportunity Comm'n, EEOC Compliance Manual, at 7 (2006) (citing <u>Phillips v. Marietta Corp.</u>, 400 U.S. 542 (1971)); <u>see</u> <u>also</u> <u>Olmstead v. L.C.</u>, 527 U.S. 581, 598 n.10 (1999) (rejecting the notion that the "Court has never endorsed an interpretation of

-19-

the term 'discrimination' that encompassed disparate treatment
among members of the same protected class" and listing cases).
Sharpe argues that, although he and his comparators may belong to
the same racial group, he is distinguishable because he is not an
immigrant and because he stands his ground when faced with "mean"
or "nasty" people.  (Pl. Opp. Mem. of Law 2; Pl. Dep. 192 ("I
just know he was -- just seemed like he was nasty, a mean person
when it came to people of color.  And if you stood your ground he
didn't care for it. . . . I know a lot of the immigrants of color
he would yell at them and they were glad to be making $20 an hour
so he had . . . this Napoleon theory but if anybody of color and
a lot of them -- none of them really talked back to him but I
wasn't raised like that.")).

I need not address the question of whether this race-
plus framework should apply in this Circuit because the evidence
provided does not support a race-plus claim.  Sharpe does not
provide any evidence supporting his belief that his comparators
are in fact immigrants or that they were characteristically
"submissive when being verbally abused."  (Pl. Opp. Mem. of
Law 2).  Moreover, Sharpe's claim of race-plus discrimination
here makes no sense.  He seems to be suggesting that Fabiitti
treated him more harshly because he "talked back" to Fabiitti
when the others in the same racial group did not.  Again, this is
not discrimination because of race; it is action taken in
response to an employee talking back.

-20-

(c)  **Fabiitti's Role in Sharpe's Termination**

**of Employment**

Sharpe suggests that MCI might have allowed "Fabi[i]tti's alleged prejudicial conduct to influence [its] termination decision." (Pl. Opp. Mem. of Law 12). I have already concluded that no reasonable juror could find that Fabiitti's behavior was motivated by plaintiff's race. Even assuming, however, that Fabiitti was biased, the evidence does not show that defendant relied exclusively or even substantially on Fabiitti's comments about Sharpe. Indeed, Fabiitti did not give plaintiff any Improvement Required Rankings, while former managers did, and Fabiitti's comments regarding Sharpe's excessive socializing at work echoed the comments of previous supervisors and managers. Consequently, the evidence provided is insufficient to raise a triable issue of fact as to whether Sharpe's employment was terminated because of his race.

Thus, considering the record as a whole, I conclude that no reasonable jury could find that Sharpe's race was a motivating factor in the termination of his employment. Accordingly, Sharpe's Title VII unlawful termination claim is dismissed.

**D.  Retaliation Claim**

In the absence of direct evidence of retaliation, a plaintiff alleging retaliatory adverse employment action usually relies on the burden-shifting McDonnell Douglas framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000) (citing

cases). The plaintiff must show the following to make out a prima facie case of unlawful retaliation: (1) the plaintiff engaged in protected activity; (2) the defendant was aware of that activity; (3) the plaintiff suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. Distasio v. Perkin Elmer Corp., 157 F.3d 55, 66 (2d Cir. 1998).

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Bryant v. Verizon Commc'n Inc., 550 F. Supp. 2d 513, 537 (S.D.N.Y. 2008) (citing Cruz, 202 F.3d at 566). "The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally." Aspilaire v. Wyeth Pharms., Inc., 612 F. Supp. 2d 289, 308-09 (S.D.N.Y. 2009) ("While plaintiff may have believed that she was the victim of discrimination, an undisclosed belief of such treatment will not convert an ordinary employment complaint into a protected activity." (citation omitted)) (citing Dinice-Allen v. Yale-New Haven Hosp., No. 06 Civ. 00675 (PCD), 2008 U.S. Dist. LEXIS 1802, 2008 WL 160206, at *4 (D. Conn. Jan. 10, 2008)).

Here, Sharpe cannot meet the first step of the prima facie case because he did not engage in protected activity. Sharpe testified that he does not remember mentioning racial discrimination in any of his complaints regarding Fabiitti's behavior. (Pl. Dep. 159-60). Sharpe further conceded that he would not question Mitchell or the Human Resource's Department's

finding that he never mentioned racial discrimination. (Id. at 159-60). Mitchell did indeed testify that Sharpe did not "mention anything about race or say anything to suggest race discrimination." (Mitchell Decl. ¶ 4). Consequently, Sharpe has not met his burden of showing that his complaints to Mitchell and Human Resources were complaints of unfair treatment due to his membership in a protected class. Aspilaire, 612 F. Supp. 2d at 308-09. As Sharpe did not engage in protected activity, his claim of retaliation fails as a matter of law and is dismissed.

**E.   State Law Claims**

        For the reasons stated above, summary judgment as to Sharpe's claims under the State and City Human Rights Laws is granted. See Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000) (identical standards apply to employment discrimination claims brought under Title VII, State Human Rights Law, and City Human Rights Law).

**CONCLUSION**

        For the foregoing reasons, defendant's motion for summary judgment is granted and the complaint is dismissed. The Clerk of the Court shall enter judgment accordingly, with costs but without attorneys' fees.

        SO ORDERED.

Dated:    New York, New York
          February 11, 2010

                                        DENNY CHIN
                                        United States District Judge

-23-